UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

i2i SYSTEMS, INC.,

    Plaintiff,

v.

VIRTUAL PRIMARY CARE, LLC; and
BRIAN LICHTLIN, individually

    Defendants.

Case No.
JURY DEMAND

**COMPLAINT FOR DAMAGES FOR FRAUD IN THE INDUCEMENT AND BREACH OF CONTRACT**

COMES NOW Plaintiff, i2i Systems, Inc., by and through undersigned counsel of record and submits this Complaint for Damages as follows:

## **PARTIES**

1. Plaintiff, i2i Systems, Inc., is a Delaware corporation with its principal place of business at 377 Riverside Dr., Suite 300, Franklin, Williamson County, Tennessee.

2. Defendant, Virtual Primary Care, LLC, is an administratively dissolved, Florida limited liability company with its principal place of business at 433 Plaza Real, Suite 275, Boca Raton, Florida 33432. Its Registered Agent for service of process is Brian Lichtlin, who may be served at 320 South Flamingo Road, #109, Pembroke Pines, Florida 33027. Alternate address of 763 Cassena Rd., Naples, FL 34108.

3. Defendant, Brian Lichtlin, was at all material times the owner, manager, member, and/or operator of Defendant, Virtual Primary Care, LLC. He may be served at 320 South

Flamingo Road, #109, Pembroke Pines, Florida, 33027. Alternate address of 763 Cassena Rd., Naples, FL 34108.

## JURISDICTION & VENUE

4. The matter in controversy exceeds the sum of value of $75,000.00, exclusive of interest and costs, and, upon information and belief, the parties are citizens of different states. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C § 1332(a)(1).

5. Venue is proper in this Court pursuant to 28 U.S.C § 1391 and 28 U.S.C § 123 because a substantial part of the events giving rise to the claim occurred in this district.

6. Further, jurisdiction and venue are proper in this Court pursuant to the agreement and consent of the parties. The Reseller Agreement ("Agreement") between the parties (attached as Exhibit A) states,

> Each of the parties hereby irrevocably submits to the exclusive jurisdiction of any United States Federal or Tennessee State Court sitting in Nashville, Tennessee, in any action or proceeding arising out of or relating to this BAA, and each party hereby irrevocably agrees that all claims with respect to any such action or proceeding may be heard and determined in any such court. (Agreement, ¶ 22).

## NATURE OF DEFENDANTS' LIABILITY

7. **ALTER EGO:** Upon information and belief, Brian Lichtlin was at all times relevant the alter ego of Virtual Primary Care, LLC. Virtual Primary Care, LLC, is a mere conduit through which Brian Lichtlin did business. The management and the operations of Virtual Primary Care, LLC, and Mr. Lichtlin were so assimilated within Virtual Primary Care, LLC to the extent that Virtual Primary Care, LLC, was simply a name through which Mr. Lichtlin conducted business. Virtual Primary Care, LLC, has been administratively

dissolved and at no relevant time did it file any annual reports with the Florida Secretary of State.

8. **AGENCY:** In the alternative, upon information and belief, at all times material to this suit, Brian Lichtlin acted as agent of Virtual Primary Care, LLC. As such, Virtual Primary Care, LLC, ratified or authorized the representations and acts of Mr. Lichtlin.

9. **JOINT ENTERPRISE:** In the alternative, upon information and belief, to the extent that Brian Lichtlin and Virtual Primary Care, LLC, are found to be separate entities that would not be liable for the acts of each other under theories that allow looking beyond the corporate fiction, each Defendant remains liable for the acts of the others because Defendants operated their business as a joint enterprise. Defendants engaged in a joint venture and acted in concert in the operation and management of Virtual Primary Care, LLC. The Defendants had an equal right to control their venture as a whole, as well as to control the operation of Virtual Primary Care, LLC.

## FACTUAL BACKGROUND

10. Plaintiff, i2i Systems, Inc. ("i2i"), is in the business of providing a proprietary set of software applications and services to its clients for population health management. i2i's clients include managed care providers, managed care health plans, health center-controlled networks, and primary and specialty care clinics, through clinical data integration and better care coordination. The services provided by i2i improve patient care and provide information for clinical decisions, care management, and an improved patient experience. i2i states on its website, "We are inspired to create innovative population health solutions and services that improve quality outcomes, care management, and consumer

experience." https://www.i2ipophealth.com/, last accessed August 31, 2022, 11:52 a.m. CDT.

11. In furtherance of its business, i2i sought a partner with a patient-engagement platform that would interface with i2i's tracking platform to improve i2i's service offerings to its clients. The sought-after platform would in turn allow i2i's clients to provide a platform to its patients, through which i2i's clients and their patients could communicate essential health information timely and securely.

12. Brian Lichtlin ("Mr. Lichtlin") represented himself to be the owner of Virtual Primary Care, LLC, ("VPC") Mr. Lichtlin represented, marketed, and warranted VPC to have a cloud-based platform that could provide the patient-engagement platform sought by i2i.

13. All material representations or statements as to VPC and its capability to provide the services sought by i21 were made by Mr. Lichtlin.

14. Plaintiff entered into a Reseller Agreement ("Agreement") with Defendant VPC on July 20, 2020. VPC's representations to i2i of the capabilities, integrations, functionality, and use of VPC's cloud-based platform were reduced to writing in the Agreement. (Exhibit A)

15. The following recitals are made by VPC in the Agreement:

> VPC has developed, owns, markets and sells certain software including a cloud-based platform that provides an array of patient engagement solutions including, but not limited to, omni-channel communications (sms, IVR, Alexa, Google Voice, etc), virtual health, virtual risk-adjustment, assessments, surveys and questionnaires for health enterprises to providers, patients, caregivers and families. (Agreement; Recital B)

16. The foregoing provision of the Agreement was a material condition of the Agreement because i2i required a completed and proven cloud-based service. But for VPC's representations that it had a "developed" cloud-based platform already in existence, i2i would not have entered into the subject agreement.

17. The Agreement further provides that i2i would "market, promote and resell VPC's solutions along with i2i's solutions and services to existing and potential i2i customers as integrated in connection with its promotion and sale of the VPC [platform]." (Agreement; Recital C).

18. The Agreement specified that "VPC is solely responsible for providing support to Qualified Clients for VPC Platform issues." (Agreement, ¶ 5). This too was a material condition of the subject Agreement.

19. In consideration of VPC's reselling of the VPC Platform, i2i was to pay VPC between $125.00 and $500.00 monthly based on the number of patients of i2i's clients that were using the platform.

20. As of January 12, 2022, there were at least fifteen (15) clients of i2i who had completed integration with the i2i/VPC Platform. On or about that date, i2i became aware that VPC's Platform had become inaccessible and inoperable.

21. On January 24, 2022, Mr. Lichtlin stopped providing any substantive communications or updates regarding the VPC Platform's inoperability, and the VPC Platform never again became operable.

22. Mr. Lichtlin and VPC's conduct causing the inoperability of the VPC Platform and/or ignoring and/or failing to properly service the VPC Platform, caused significant financial harm and injury to the goodwill and reputation of i2i due to the negative impact the Platform's inoperability caused i2i's clients.

23. Upon information and belief, the failure of the VPC Platform was due, in whole or in part, to Mr. Lichtlin's intentional misrepresentation that VPC had an already developed, pre-existing, and operable cloud-based platform that induced i2i to enter into the Agreement.

24. Upon information and belief, the types of system failures experienced by the VPC Platform and the inability of VPC to correct those system failures would not have happened if VPC had "developed, own[ed], market[ed] and s[old]" the VPC Platform prior to entering into the Agreement with i2i.

25. i2i would not have entered into the Agreement but for Mr. Lichtlin's fraudulent statements that as of July 20, 2020, VPC had "developed," owned, marketed and sold the VPC Platform.

26. i2i has had to expend time and money to refund its clients and repair the damage to its goodwill, as a result of VPC's and Mr. Lichtlin's acts.

27. In an effort to mitigate its losses, i2i was required to develop and build its own platform of the kind VPC fraudulently marketed so that i2i could serve its clients. i2i could have undertaken a more extensive and deliberate build-out of its own platform prior to marketing the platform to i2i's clients, had i2i not wasted approximately 18 months in working with VPC to integrate the VPC Platform. The unexpected need to expeditiously develop its own cloud-based platform to serve as a substitute for VPC's inoperable platform caused otherwise avoidable labor and equipment costs to i2i.

28. i2i suffered other direct and indirect economic damages, consequential damages, and other incidental damages arising from VPC's breach of the Agreement.

29. Lichtlin has, upon information and belief, gone on to serve as co-founder and CEO of PRO Certified Healthcare, which declares that it is "A data driven platform built to leverage patient-reported outcomes." http://procertified.health/, last accessed August 31, 2022, 11:56 a.m. CDT.

## COUNT I – FRAUD IN THE INDUCEMENT

30. Brian Lichtlin and/or VPC falsely represented to i2i a material fact, i.e., that at the time of entering into the Agreement, VPC already had developed, owned and marketed a cloud-based platform that provided patient engagement solutions of the kind sought by i2i in Paragraph B of the Recitals section of the Agreement.

31. Mr. Lichtlin and/or VPC knew that VPC had not already developed, owned, and marketed such a cloud-based platform.

32. Mr. Lichtlin and/or VPC intentionally made the false statement to induce i2i to enter into the Agreement, because Mr. Lichtlin knew that it was material to i2i that the cloud-based platform be developed, proven, and operable.

33. In justifiable reliance upon Mr. Lichtlin and/or VPC's intentional misstatement, i2i entered into the Agreement.

34. Had VPC not fraudulently induced i2i to enter into the Agreement, i2i would not have spent 18 months and substantial resources working with VPC to develop the VPC platform but would have instead used that time to develop its own analogous platform.

## COUNT II – BREACH OF CONTRACT

35. VPC had an obligation under the Agreement to provide service and customer support to i2i's clients relating to the use and operation of the VPC Platform.

36. VPC breached that obligation when, beginning on or about January 12, 2022, it failed to provide customer support and service to i2i's clients relating to the VPC Platform when the VPC Platform became inoperable and remained inoperable thereafter.

37. VPC's breach continued and was compounded beginning on or about January 24, 2022, and thereafter, when it failed to provide any substantive communication about the VPC

platform to i2i. As of the filing of this Complaint, VPC and Brian Lichtlin have failed or refused to communicate with i21 about the VPC Platform.

38. VPC had a contractual duty to act reasonably and with good faith and fair dealing in its interactions and obligations to i2i and i2i's clients, including but not limited to providing customer support for VPC's Platform.

39. VPC breached its duty by ceasing or refusing to provide any support or customer service to VPC's Platform after VPC was made aware that its Platform had become inoperable.

40. i2i was damaged by VPC's breach of its duty to act with good faith and fair dealing by incurring costs including but not limited to developing an alternative platform, reimbursing its clients, and lost profits.

41. The Agreement at ¶ 24 provides that the prevailing party in any action to enforce its rights under the Agreement would be entitled to recover its costs and reasonable attorneys' fees.

42. i2i has incurred costs and reasonable attorneys' fees in the enforcement of the Agreement.

43. i2i is entitled to an award of its costs and reasonable attorneys' fees as a result of VPC's breaches of the Agreement.

## DAMAGES

44. i2i seeks damages including but not limited to:
    a. Lost profits;
    b. Reimbursement costs;
    c. Loss of goodwill;
    d. Opportunity costs;
    e. Replacement costs;
    f. Prejudgment interest;

g. Attorneys' fees, costs, and expenses in enforcing the Agreement; and

h. For all other relief to which Plaintiff may be entitled under the law.

## TRIAL BY JURY

45. Defendant demands a trial by jury of twelve.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, i2i Systems, Inc., prays that this Honorable Court cause process to be issued to Defendants Virtual Primary Care, LLC, and Brian Lichtlin, and that it be awarded all such damages as pled in this Complaint, and for all such further relief as may appear proper from the premises.

Respectfully submitted,

**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**

/s/ Michael W. Higginbotham
MICHAEL W. HIGGINBOTHAM, #16141
JAMES MARSHALL DIGMON, #30134
5050 Poplar Avenue, Suite 1430
Memphis, TN 38157
Tel.: 901.312.1640
Fax: 901.312.1639
michael.higginbotham@qpwblaw.com
marshall.digmon@qpwblaw.com
*Counsel for Plaintiff*